OPINION. Harron, Judge: The question is whether payments aggregating $16,500, which the petitioner, received in each of the years 1943 and 1944 from her former husband under a written agreement, are includi-ble in her gross income under section 22 (k) of the Code[1] as payments received under a written instrument incident to a divorce. The narrow question is whether a written agreement was incident to a divorce. The question, is essentially one of fact. Petitioner contends that it was only after both parties had signed the separation agreement that she promised to obtain a divorce. She argues that the facts of this proceeding are similar to those in Joseph J. Lerner, 15 T. C. 379, and that that case is controlling. However, after careful consideration of all of the evidence, it has been concluded that the separation agreement was executed in contemplation of the divorce, and that it was incident to the divorce. Petitioner and her former husband negotiated with each other for 10 months relative to a property settlement. The topic of divorce was often discussed. In the light of this background and the events that followed, it is difficult to believe petitioner’s contention that she signed the separation agreement on August 31,1937, not planning to secure a divorce; but that after a telephone conversation with her attorney on the following day, in which she was told the agreement was to be held in escrow and would be inoperative until a divorce was secured, she agreed to obtain a divorce. We have carefully examined all of the testimony and the documentary evidence and, after due deliberation, have come to the conclusion and found as a fact that before the petitioner signed the separation agreement on August 31,1937, both parties contemplated that the petitioner would secure a divorce. However, even if the petitioner’s contention is assumed to be true, it is clear that at the time the agreement became binding as a contract both parties to it contemplated that a divorce would soon follow. The evidence shows that Colonel Guggenheim did not sign the separation agreement until September 2, 1937. This event took place after the escrow agreement had been made. The escrow agreement had been made admittedly after petitioner agreed to secure a divorce. Thus at the time the separation agreement became a binding contract both parties had agreed to a divorce. There are additional factors leading to the inescapable conclusion that the separation agreement bore a direct relationship to the divorce, and, therefore, was incident to it. The most important of these is that the agreement was held in escrow, and its operation was contingent upon the securing of a divorce by the petitioner. No agreement can be more incident to a divorce than one which does not operate until the divorce is secured and would not operate unless the divorce was secured. See Tuckie G. Hesse, 7 T. C. 700 (1946). In addition, the divorce was secured immediately after the execution of the agreement. Only 12 days after the agreement was delivered to Colonel Guggenheim’s attorney, petitioner had established a residence in Reno, Nevada, preparatory to commencing her action for divorce. This was on September 13,1937, two days before the deadline set by Colonel Guggenheim for return of his check for $850. That is a factor which strongly supports the conclusion that the agreement was made in contemplation of a divorce. Estate of Daniel G. Reid, 15 T. C. 573 (1950); Mahana v. United States (Ct. Cl. 1950), 88 F. Supp. 285, certiorari denied, 339 U. S. 978 (1950). The record in this proceeding is lengthy, but to review the facts further is unnecessary. The facts in the Lerner case, supra, are clearly distinguishable from the facts in the instant proceeding. In the 'Lerner case, there was no talk of divorce prior to the execution of the separation agreement there involved; there was no escrow agreement; and the divorce action was not begun until more than a year after the separation agreement was executed. The holding in the Lerner case is not applicable in this proceeding. The facts in our recent decision in Cecil A. Miller, 16 T. C. 1010, are clearly distinguishable from the facts in this proceeding. The respondent’s determination is sustained. The respondent added penalties to the deficiencies. The penalty for the year 1943 was added under section 291 (a) of the Code, and the penalty for 1944 was added under sections 294 (d) (1) (A) and 294 (d) (2). There is no evidence to show that the penalties were not properly added to the deficiencies, and the petitioner has not contested the additions of the penalties. The additions of the penalties are sustained. Decision will be entered for the respondent. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS SEC. 22. GROSS INCOME. »****•« (k) Alimony, Etc., Income. — In the case of a -wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of a legal obligation which because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible la í'fes ¿oross income of such wife, * *